Filed 3/17/16

# IN THE SUPREME COURT OF CALIFORNIA

ESTUARDO ARDON, )
)
      Plaintiff and Respondent, )
)       S223876
      v. )
)     Ct.App. 2/6 B252476
CITY OF LOS ANGELES, )
)     Los Angeles County
      Defendant and Appellant. )   Super. Ct. No. BC363959
_____ )

      In civil discovery proceedings during the course of litigation between plaintiff Estuardo Ardon and defendant City of Los Angeles (City), the trial court determined that certain documents City possessed were privileged under the attorney-client privilege or the privilege for attorney work product, and City withheld them from plaintiff. Years later, plaintiff filed a request under the California Public Records Act (Gov. Code, § 6250 et seq.; Public Records Act) seeking to obtain documents relating to the subject matter of the litigation. In response, City's administrative office inadvertently provided plaintiff with some of the privileged documents. We granted review to decide whether the release of privileged documents under these circumstances waives the privilege, thus allowing plaintiff to retain and use the documents and to disseminate them to others. The question requires us to interpret Government Code section 6254.5 (section 6254.5), part of the Public Records Act, which generally provides that "disclosure" of a public record waives any privilege.

1

Interpreting section 6254.5 in light of the Public Records Act as a whole, we conclude that its waiver provision applies to an intentional, not an inadvertent, disclosure. A governmental entity's inadvertent release of privileged documents under the Public Records Act does not waive the privilege. Accordingly, we reverse the judgment of the Court of Appeal, which reached a contrary conclusion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this case has come before this court. (See *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241.) As we explained in our earlier opinion, plaintiff filed a class action lawsuit against defendant City challenging the validity of a certain tax and seeking a refund of taxes already collected.

In March and September 2007, as part of the underlying litigation, plaintiff served City with two requests for production of documents relating to the tax in dispute. It also served a subpoena for production of business records on the League of California Cities, of which City is a member. City produced some of the requested documents but, in February 2008, it also provided plaintiff with "Defendant City of Los Angeles' Privilege Log" (privilege log), listing 27 documents it was withholding on the basis that they were privileged. In March 2008, the superior court granted motions to quash filed by City and the League of California Cities, finding certain documents to be privileged under either the attorney-client privilege or the privilege for attorney work product.

On January 14, 2013, Rachele R. Rickert, one of plaintiff's attorneys, acting pursuant to the Public Records Act, requested the "City Administrative Officer" to provide copies of documents relating to the tax at issue. On January 25, 2013, an assistant city administrative officer responded that "[w]e have approximately 53 documents that pertain to your request," which they would provide at a cost of $6.95. Plaintiff paid the fee, and the city administrative office provided the documents.

2

In April 2013, Attorney Rickert informed opposing counsel in this case by letter that, pursuant to the Public Records Act request, she had received two documents that appeared to match the description of two of the documents listed in the privilege log, specifically: (1) a memorandum dated June 1, 2006, from City's administrative officer to the city attorney (it appears plaintiff received an undated version of the document); and (2) a memorandum dated June 27, 2006, from the legal department of the League of California Cities. The letter also stated that Rickert had "obtained a copy of a document responsive to what appears to be documents 3 and 21 [as listed in the privilege log], and which discloses their contents." In fact, this third item appears related to a single document listed twice in the privilege log. Items 3 and 21 in the privilege log describe a letter "prepared by legal counsel" dated September 18, 2006, from David Michaelson, the chief assistant of the city attorney, to William Fujioka, city administrative officer. Attorney Rickert states that she did not receive the actual letter from Michaelson to Fujioka, but only a document that discloses its contents.

In a letter responding to Rickert's letter, City stated that the three documents she specified were privileged and had been produced inadvertently. It requested that Rickert return them and agree not to rely on them. Rickert refused to return the documents, contending that their production had waived any claim of privilege.

City then filed a motion in the superior court for an "order compelling the return of privileged material and to disqualify plaintiff's counsel of record." The trial court denied the motion, concluding that the production of the documents under the Public Records Act had waived any privilege. City appealed. (Code Civ. Proc., § 904.1, subd. (a)(6); see *Meehan v. Hopps* (1955) 45 Cal.2d 213.) The Court of Appeal affirmed. It agreed with the trial court that the production of the documents waived any privilege. It held that "because the documents were

3

disclosed to Ms. Rickert, City is precluded from denying disclosure to anyone who asks."

We granted City's petition for review.

After City filed its opening brief on the merits, plaintiff informed us, for the first time, that the underlying lawsuit was, and long had been, in the process of settlement. He moved to stay this appeal pending finalization of the settlement. We denied the motion. Settling the underlying lawsuit would not make this separate dispute moot. Plaintiff would still possess the privileged documents and could use them for any purpose. City would still be precluded from denying disclosure of them to anyone who asks. Moreover, the legal issue remains one of statewide importance. Accordingly, we will decide this dispute on the merits.

## II. DISCUSSION

"The California Legislature in 1968, recognizing that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state' (Gov. Code, § 6250), enacted the California Public Records Act, which grants access to public records held by state and local agencies (Gov. Code, § 6253, subd. (a)). The act broadly defines ' "[p]ublic records" ' as including 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency . . . .' (Gov. Code, § 6252, subd. (e).) The act has certain exemptions (Gov. Code, §§ 6254-6254.30), but a public entity claiming an exemption must show that the requested information falls within the exemption (*id*., § 6255, subd. (a))." (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66-67.)

The exemptions are numerous and generally involve documents that for one reason or another should remain confidential. Relevant here is Government Code section 6254, subdivision (k), which exempts from disclosure "[r]ecords, the

4

disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code related to privilege." City contends the documents at issue here come within either of two statutory privileges: (1) the attorney-client privilege (Evid. Code, § 954) and (2) the attorney work product privilege (Code Civ. Proc., § 2018.030).

Plaintiff counters that City has waived the privileges by disclosing the documents in response to the Public Records Act request. He relies on section 6254.5, which provides that "[n]otwithstanding any other provisions of law, whenever a state or local agency discloses a public record which is otherwise exempt from this chapter [the Public Records Act], to any member of the public, this disclosure shall constitute a waiver of the exemptions specified in Sections 6254, 6254.7, or other similar provisions of law." This section provides a number of exceptions to this waiver rule, none of which apply here and none of which refer to an inadvertent disclosure. Plaintiff argues that *any* disclosure, including an inadvertent one, waives the privilege. As we explain, we find the statutory language as a whole ambiguous in this regard, and we resolve the ambiguity by concluding that inadvertent disclosure does not waive the exemptions.

We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components. (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165.) Government Code section 6254 exempts a long list of documents from its disclosure requirements. Many of these exemptions concern information provided to the government by third parties and reflect the reality that, in order to perform their many functions, governmental agencies must gather much information, some of which the parties providing the information wish to be kept confidential. This is true, for example, of "[g]eological and geophysical data . . . or market or crop reports, that are obtained in confidence from any person" (§ 6254, subd. (e));

5

"[l]ibrary circulation records" (*id.*, subd. (j)); "[s]tatements of personal worth or personal financial data required by a licensing agency and filed by an applicant with the licensing agency to establish his or her personal qualification for the license, certificate, or permit applied for" (*id.*, subd. (n)); and "[r]ecords of Native American graves, cemeteries, and sacred places" (*id.*, subd. (r)). Other exemptions are designed to safeguard governmental interests concerning national security. (See, e.g., Gov. Code, § 6254, subd. (aa) [documents assessing vulnerability of agency to terrorist attack]; *id.*, subd. (u)(1) [information indicating when or where a concealed-firearm licensee is vulnerable to attack].)

Thus, considering as a whole the many exemptions for confidential information specified in Government Code section 6254, it is doubtful the Legislature intended to enact a statutory scheme that would prevent government agencies from minimizing the damage caused by the inadvertent disclosure of private and confidential information. Nor is it likely the Legislature intended to adopt a rule that inadvertent disclosure requires confidential information to be made generally available to the public. Much more plausible is that the Legislature intended to permit state agencies to waive the exemptions by making a voluntary and knowing disclosure, while prohibiting them from selectively disclosing the records to one member of the public but not others.

Consideration of section 6254.5 itself as a whole confirms this interpretation. Section 6254.5 refers to the effect of a disclosure "to any member of the public," and its subdivisions identify various circumstances in which a public agency may choose to disclose documents to some smaller audience than the public as a whole. For example, a public agency is permitted to selectively disclose information without waiving an exemption if the disclosure is "[m]ade through other legal proceedings" (§ 6254.5, subd. (b)), or "[m]ade to any governmental agency which agrees to treat the disclosed material as confidential"

6

(*id.*, subd. (e)), or if the disclosure is of "records relating to a financial institution or an affiliate thereof" and "made to the financial institution or affiliate by a state agency responsible for the regulation or supervision of the financial institution or affiliate" (*id.*, subd. (f)). Several of section 6254.5's exceptions evince a particular concern with the third-party confidentiality interests at stake. Subdivision (a), for example, exempts disclosures "[m]ade pursuant to the Information Practices Act," which sets out fairly strict requirements for disclosure of personal information maintained by public agencies. (See Civ. Code, § 1798.24 ["An agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed, as follows: . . . ."].) And subdivisions (g) and (i) refer to disclosures of certain records to the person "that is the subject of the records for the purpose of corrective action by that person." Nothing in these provisions suggests that the Legislature contemplated the effect of an inadvertent disclosure. Rather, read together, the provisions appear to address the *authority* of public agencies with respect to releasing exempt documents. Given the Legislature's apparent concern with protecting confidentiality interests, it would be at least somewhat surprising to discover that the Legislature fashioned these provisions as exceptions from a general background rule that mandates the forfeiture of such confidentiality based on nothing more than an agency's mistaken disclosure of information to a member of the public — particularly to a person who has made no "agree[ment] to treat the disclosed material as confidential." (Gov. Code, § 6254.5, subd. (e).)

Plaintiff argues that none of the exceptions to the waiver rule in section 6254.5 govern inadvertent disclosure and that, because the Legislature provided several express exceptions, we should not find an implied exception for inadvertent disclosure. But this begs the question of how the statutory language should be interpreted in the first place. The exceptions in section 6254.5, read as a

7

whole, appear to contemplate intentional disclosure. The fact the Legislature provided exceptions to the waiver rule for certain intentional disclosures does not mean that disclosure under section 6254.5 includes the inadvertent release of privileged documents.

Thus, even if the word "disclosure" by itself is unambiguous, considering section 6254.5 in its larger context, we conclude that its language permits more than one interpretation with respect to inadvertent disclosure. In that event, we "may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

The legislative history confirms that section 6254.5 does not contemplate inadvertent disclosures. As one Court of Appeal recently summarized: "The bill creating section 6254.5, Senate Bill No. 879 (1981-1982 Reg. Sess.), was enacted in 1981. (Stats. 1981, ch. 968, § 3, p. 3682.) Although section 6254.5 has been amended several times since, the language critical here was present in the statute from the first. Repeatedly in contempora[neous] legislative documents concerning Senate Bill No. 879, it was stated that the portion of the bill containing section 6254.5 was intended to codify existing case law. An enrolled bill report prepared by the California's former Department of Corporations explains: 'Proponents of this bill indicate that [proposed section 6254.5] is merely a codification of the views of the Court of Appeal in *Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645 regarding "selective disclosures" by state agencies of "confidential information." ' (Dept. of Corporations, Enrolled Bill Rep. on Sen. Bill No. 879 (1981-1982 Reg. Sess.) Sept. 28, 1981, p. 1.)" (*Newark Unified School Dist. v. Superior Court* (July 31, 2015, A142963) __ Cal.App.4th __, __, [pp. 11-12]), review granted Oct. 14, 2015, S229112, ordered pub. Mar. 17, 2016

8

(*Newark*).)  The *Newark* court cited other legislative history materials to similar effect.  (*Id*. at p. __ [pp. 12-13].)

In *Black Panther Party v. Kehoe*, *supra*, 42 Cal.App.3d 645 (*Kehoe*), the plaintiffs filed Public Records Act requests with the state agency in charge of licensing debt collection businesses, seeking copies of citizen complaints regarding those businesses.  The agency contended the complaints came within an exemption for records of complaints and investigations under Government Code section 6254, subdivision (f).  The Court of Appeal agreed.  But the court nonetheless ordered the documents disclosed because the agency routinely disclosed the complaints to the businesses themselves.  It explained that the exemption provisions make the records either "completely public or completely confidential.  The Public Records Act denies public officials any power to pick and choose the recipients of disclosure.  When defendants elect to supply copies of complaints to collection agencies, the complaints become public records available for public inspection."  (*Kehoe*, *supra*, at pp. 656-657, fn. omitted.)

Plaintiff agrees the legislative purpose behind section 6254.5 was to codify the holding of *Kehoe*, *supra*, 42 Cal.App.3d 645.  But he argues, and the Court of Appeal in this case agreed, that this purpose supports the conclusion that the disclosure here did constitute a waiver.  The Court of Appeal believed that finding no waiver would be "inconsistent with the legislative history of section 6254.5.  City pointed out that statements by legislators and in a legislative staff report declare the purpose of the waiver was to avoid 'selective disclosure.'  The exception sought by City would accomplish exactly that; viz., selective disclosure of the allegedly privileged documents to Ms. Rickert but not to others."  However, City does not seek selective disclosure.  Rather, it seeks no disclosure; it is trying to force plaintiff's attorney to return the privileged documents unread.  As the *Newark* court explained in rejecting a similar argument, characterizing the

9

"inadvertent disclosure as 'selective' merely because it is made to a particular group of recipients, rather than to the public as a whole . . . misunderstands the meaning of 'selective' as used in *Kehoe*. When a release is inadvertent, no 'selection' occurs because the agency has not exercised choice in making the release. It was an accident. Accordingly, an inadvertent release does not involve an attempt to assert the exemption as to some, but not all, members of the public, the problem section 6254.5 was intended to address." (*Newark*, *supra*, __ Cal.App.4th at p. __ [pp. 13-14].)

We further note that construing section 6254.5 so as not to include inadvertent disclosures of attorney-client or work product material is consistent with the way in which the attorney-client and work product privileges have been construed. Both privileges serve important purposes. The former safeguards "the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599.) The latter enables "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." (*Hickman v. Taylor* (1947) 329 U.S. 495, 510-511.) These privileges apply to governmental entities as well as to private parties. "A city council needs freedom to confer with its lawyers confidentially in order to obtain adequate advice, just as does a private citizen who seeks legal counsel, even though the scope of confidential meetings is limited by this state's public meeting requirements. [Citations.] The public interest is served by the privilege because it permits local government agencies to seek advice that may prevent the agency from becoming embroiled in litigation, and it may permit the agency to avoid unnecessary controversy with various members of the public." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 380-381.)

Important as these privileges are, however, they can be waived. Evidence Code section 912, subdivision (a), generally provides that the attorney-client privilege "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone."

Case law has construed Evidence Code section 912 restrictively. In *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*), the plaintiff's attorney provided the defendant's attorney with three boxes of documents during discovery. Inadvertently, however, the plaintiff's attorney also provided numerous documents that were privileged under the attorney-client privilege. When the mistake was discovered, the defense attorney refused to return the documents, contending that their production had waived the privilege. "Based on the language of Evidence Code section 912," the appellate court held "that 'waiver' does not include accidental, inadvertent disclosure of privileged information by the attorney." (*State Fund*, at p. 654.) It quoted with approval from another case that had found no waiver of the attorney-client privilege in similar circumstances. " '[Plaintiff] invites us to adopt a "gotcha" theory of waiver, in which an underling's slip-up in a document production becomes the equivalent of actual consent. We decline. The substance of an inadvertent disclosure under such circumstances demonstrates that there was no voluntary release.' " (*Ibid.*, quoting *O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 577.)

The court summarized the ethical obligations of an attorney who receives privileged documents due to inadvertence. "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through

11

inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified." (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657.)

*State Fund* explained that its conclusion "is fundamentally based on the importance which the attorney-client privilege holds in the jurisprudence of this state. Without it, full disclosure by clients to their counsel would not occur, with the result that the ends of justice would not be properly served. We believe a client should not enter the attorney-client relationship fearful that an inadvertent error by its counsel could result in the waiver of privileged information or the retention of the privileged information by an adversary who might abuse and disseminate the information with impunity." (*State Fund*, *supra*, 70 Cal.App.4th at p. 657.)

Although not citing Evidence Code section 912, this court embraced the *State Fund* holding in *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 (*Rico*). In *Rico*, an attorney received through inadvertence documents subject to the attorney work product privilege. We held that the "*State Fund* rule is a fair and reasonable approach." (*Id*. at p. 817.) We rejected the argument that the *State Fund* rule applies only to documents protected by the attorney-client privilege and does not extend to documents protected by the attorney work product privilege. We agreed with the Court of Appeal in the case that the " '*State Fund* standard applies to documents that are plainly privileged and confidential, regardless of whether they are privileged under the attorney-client privilege, the work product

12

privilege, or any other similar doctrine that would preclude discovery based on the confidential nature of the document.' " (*Rico*, at pp. 817-818, fn. 9.)

One reason we embraced the *State Fund* rule was the practical consequences of adopting a contrary position. "The *State Fund* rule also addresses the practical problem of inadvertent disclosure in the context of today's reality that document production may involve massive numbers of documents. A contrary holding could severely disrupt the discovery process. As amicus curiae the Product Liability Advisory Council, Inc., argues, 'Even apart from the inadvertent disclosure problem, the party responding to a request for mass production must engage in a laborious, time consuming process. If the document producer is confronted with the additional prospect that any privileged documents inadvertently produced will become fair game for the opposition, the minute screening and re-screening that inevitably would follow not only would add enormously to that burden but would slow the pace of discovery to a degree sharply at odds with the general goal of expediting litigation.' " (*Rico*, *supra*, 42 Cal.4th at p. 818.)

To be sure, the holding in *State Fund* was limited to the situation in which the attorney, rather than the client as the holder of the privilege, inadvertently discloses privileged material. But in repudiating the " ' "gotcha" theory of waiver, in which an underling's slip-up in a document production becomes the equivalent of actual consent' " (*State Fund*, *supra*, 70 Cal.App.4th at p. 654), the court recognized that the disclosure contemplated in Evidence Code section 912 involves some measure of choice and deliberation on the part of the privilege holder. A construction of Government Code section 6254.5 that does not require waiver of an exemption due to inadvertent disclosure would place that statute in alignment with the law governing the waiver of evidentiary privileges.

13

Indeed, in light of the fact that human error is as likely to occur in the process of responding to a Public Records Act request as to a discovery request, there appears to be no reason why inadvertent disclosures should be treated differently in the former situation than in the latter. As part of our discussion in *Rico* concerning the practical consequences of a holding that inadvertent release of documents would waive any privilege, we quoted an amicus curiae brief regarding the practicalities of responding to Public Records Act requests. (*Rico*, *supra*, 42 Cal.4th at p. 818.) In urging review here, the San Francisco city attorney's office, representing amici curiae the League of California Cities and the California State Association of Counties, made a similar argument: "With nearly 500 cities and 58 counties in California — not to mention other types of public entities — the impact of the Court of Appeal's decision, if allowed to stand, will be great. Though precise quantitative figures are unavailable, [amici curiae] can in good faith represent that each year public entities in this state collectively receive thousands upon thousands of public records requests. And the number of requests seems to be increasing each year . . . . Further, the volume of records covered by even one public records request can be staggering [citing one request involving 65,000 pages of documents]. . . . [¶] Public entities recognize that they must function under these pressures, and they can always strive to do better — albeit with finite resources — in avoiding erroneous disclosures of privileged records. But the logistical problems public entities can face in reviewing, in some cases, even thousands of pages of records responsive to a public records request . . . is daunting. It would be foolish to believe that human errors in the processing of public records requests will cease . . . ."

We thus see no reason to construe Government Code section 6254.5 differently than Evidence Code section 912 in this regard, and good reason not to do so. We conclude that, in enacting section 6254.5, the Legislature intended to

14

permit state and local agencies to waive an exemption by making a voluntary and knowing disclosure, while prohibiting them from selectively disclosing the records to one member of the public but not others. But, considering the language of section 6254.5 in its proper context, we conclude that it does not apply to inadvertent disclosures.

Plaintiff argues, and the Court of Appeal stressed, that his attorney acted properly in requesting documents under the Public Records Act. This may be so, but it is irrelevant. The question is not whether counsel should have used the Public Records Act in this way; the question is what she should have done after receiving what appeared to be privileged documents.

The Court of Appeal also noted that when privileged documents are inadvertently released as part of discovery during litigation, the court assigned the case is available to supervise any dispute; but, under the Public Records Act, a judicial forum might not be as readily available. This is correct. Indeed, if the inadvertent disclosure under the Public Records Act is made to a nonlawyer, the public agency might never become aware of the mistake. But the fact that a proper remedy might be difficult to obtain for an inadvertent disclosure under the Public Records Act provides no reason to deny a remedy when a judicial forum does exist. Here, City moved in the trial court assigned the underlying case for relief. Doing so was proper.

Both plaintiff and the Court of Appeal cite *Masonite Corp. v. County of Mendocino Air Quality Management Dist.* (1996) 42 Cal.App.4th 436, a case involving trade secrets. But *Masonite* is irrelevant here. In that case, a corporation filed with a public agency documents that disclosed trade secrets. It later tried to prevent disclosure of the documents under the Public Records Act. As the *Newark* court explained, "Interpreting provisions of the Health and Safety Code applicable to the specific documents at issue, the [*Masonite*] court held that

15

they became public records when filed, thereby waiving any trade secret claim. (*Masonite*, at pp. 453-454.)  In addition, the *Masonite* court noted, its decision was 'reinforced' by the provisions of section 6254.5, which hold that a disclosure of otherwise protected documents by a public employee acting within the proper scope of his or her duties creates a waiver.  (*Masonite*, at pp. 454-455.)  Because this comment assumed an intentional rather than inadvertent release of documents by the public agency, its ruling has no bearing on, and plainly did not purport to address, the consequences of an inadvertent release." (*Newark*, *supra*, __ Cal.App.4th at p. __ [p. 22]; see *Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 889 ["Inadvertent disclosure of a trade secret is unlike inadvertent disclosure of information subject to the attorney-client privilege, which requires counsel who receives the inadvertent disclosure to protect the privileged information."].)

Plaintiff argues that section 6254.5 must be broadly construed to protect the people's right of access to information.  He cites the California Constitution, article I, section 3, subdivision (b)(2), which provides that a statute "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access."  To the extent legislative intent is ambiguous, this provision requires us either to broadly or to narrowly construe the Public Records Act, whichever way will further the people's right of access. (*Sierra Club v. Superior Court*, *supra*, 57 Cal.4th at p. 166.)  But this rule of construction does not require the courts to resolve every conceivable textual ambiguity in favor of greater access, no matter how implausible that result in light of all the relevant indicia of statutory meaning.  In this case, consideration of the statutory text, context, purpose, and history leave us with no genuine doubt but that the Legislature did not intend for the Public Records Act's protections to be forfeited through simple inadvertence.  Consideration of article I, section 3's rule

16

of narrow construction does not alter our conclusion about the meaning of section 6254.5.

Our holding that the inadvertent release of exempt documents does not waive the exemption under the Public Records Act must not be construed as an invitation for agencies to recast, at their option, any past disclosures as inadvertent so that a privilege can be reasserted subsequently. This holding applies to truly inadvertent disclosures and must not be abused to permit the type of selective disclosure section 6254.5 prohibits. The agency's own characterization of its intent is not dispositive, just as it is not dispositive under the law of privilege. (See *State Fund*, *supra*, 70 Cal.App.4th at pp. 652-653 ["A trial court called upon to determine whether inadvertent disclosure of privileged information constitutes waiver of the privilege must examine both the subjective intent of the holder of the privilege and the relevant surrounding circumstances for any manifestation of the holder's consent to disclose the information."])

Along these lines, plaintiff argues that, even if inadvertent disclosure does not waive the privileges, the disclosure here was not inadvertent. He also argues that one of the documents in question either is not privileged or the privilege has been waived for different reasons. On this record — given that City successfully fought to withhold the documents during discovery and promptly moved for their return after learning of their release — it is hard to imagine that City would not be able to demonstrate that the disclosure was inadvertent. (Cf. *State Fund*, *supra*, 70 Cal.App.4th at p. 653 [considering evidence of the subjective intent of the holder of the privilege, precautions taken to ensure that the privilege was maintained, and the promptness with which the privilege holder sought return of the documents].) But the superior court made no findings beyond holding that inadvertent disclosure waives the privileges. If plaintiff wishes to pursue these points on remand, he may do so.

17

In addition to seeking the return of the privileged documents, City moved in the superior court to disqualify plaintiff's attorney. (See generally *Rico*, *supra*, 42 Cal.4th at pp. 819-820.) It is not clear whether City still seeks that remedy. In any event, given the absence of any relevant trial court findings, we have no basis on this record to decide the question. If City wishes to pursue the point on remand, it may do so.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ardon v. City of Los Angeles

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 232 Cal.App.4th 175
**Rehearing Granted**

_____

**Opinion No.** S223876
**Date Filed:** March 17, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Lee Smalley Edmon

_____

**Counsel:**

Noreen S. Vincent and Beverly A. Cook, Assistant City Attorneys; Colantuono, Highsmith & Whatley, Michael G. Colantuono, Holly O. Whatley, Amy C. Sparrow and Tiana J. Murillo for Defendant and Appellant.

Edward J. McIntyre and Leah S. Strickland for San Diego County Bar Association as Amici Curiae on behalf of Defendant and Appellant.

Dennis J. Herrera, City Attorney (San Francisco), Christine Van Aken, Chief of Appellate Litigation, Paul Zarefsky and Warren Metlitzky, Deputy City Attorneys, for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Lewis Brisbois Bisgaard & Smith, Kira L. Klatchko; Best Best & Krieger and Irene S. Zurko for International Municipal Lawyers Association as Amici Curiae on behalf of Defendant and Appellant.

Wolf Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert, Marisa C. Livesay; Chimicles & Tikellis, Timothy N. Mathews; Cuneo Gilbert & Laduca, Sandra W. Cuneo; Tostrud Law Group and Jon A. Tostrud for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Holly O. Whatley
Colantuono, Highsmith & Whatley
300 S. Grand Avenue, Suite 2700
Los Angeles, CA  90071-3137
(213) 542-5700

Francis M. Gregorek
Wolf Haldenstein Adler Freeman & Herz
Symphony Towers
750 B Street, Suite 2770
San Diego, CA  92101
(619) 239-4599