Filed 1/5/23 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B319961 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA398731) |
| v. | |
| MAURICE WALKER, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on December 15, 2022, be modified as follows:

1. On page seven, in the last sentence of the first paragraph, which ends in "resentencing," delete "as well

---

**\*** Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

as conduct credits," so that the sentence reads:

> "As a result, we direct the trial court to impose the prior serious felony enhancement only once to defendant's total sentence (such that the court must not include that enhancement as part of the elder abuse sentence), and to recalculate the actual custody credits based on the time between the date of defendant's arrest and the date of resentencing."

2. On page eight, in the first sentence of the first full paragraph, which begins, "Defendant's appeal requires," replace "requires us to confront" with "presents," so that the beginning of the sentence reads:

> "Defendant's appeal presents two questions about section 1385's meaning, although he only expressly raises the second question . . . ."

3. In the last full sentence on page 17, which begins, "However," insert "under the terms of section 1385, subdivision (c)" after "public safety," so that the sentence reads:

> "However, because whether dismissal of an enhancement is 'in the furtherance of justice' is an ultimate finding that necessarily rests on a subsidiary finding that dismissal would endanger public safety under the terms of section 1385, subdivision (c), we may imply a finding of the latter

from its express finding of the former."

\*    \*    \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.   HOFFSTADT, J.

3

Filed 12/15/22 (unmodified opinion)
**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B319961 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA398731) |
| v. | |
| MAURICE WALKER, | |
| Defendant and Appellant. | |

      APPEAL from an order of the Superior Court of Los Angeles County, David R. Fields, Judge.  Affirmed in part, reversed in part, and remanded with directions.

      Law Offices of Jason Szydlik and Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

---

*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

For all criminal sentencings after January 1, 2022, our Legislature in Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) has provided direction on how trial courts are to exercise their discretion in deciding whether to dismiss sentencing enhancements. Specifically, Penal Code section 1385 now provides that the presence of one of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement[] unless the court finds that dismissal of the enhancement would endanger public safety." (Pen. Code, § 1385, subd. (c)(2).)[1]

This appeal presents two questions of first impression.

First, does the mitigating circumstance that exists when there are "[m]ultiple enhancements . . . in a single case" and specifies that "all enhancements beyond a single enhancement shall be dismissed" *require* the court to dismiss all but one of those enhancements in every case with multiple enhancements? We conclude that the answer is "no."

Second, what does it mean to "greatly weigh" a mitigating circumstance in deciding whether to dismiss an enhancement? We conclude that section 1385's mandate to "afford great weight" to mitigating circumstances erects a rebuttable presumption that

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement—with the resultingly shorter sentence—would endanger public safety.

In light of these holdings, we affirm the trial court's denial of the motion to dismiss the two enhancements at issue in this case. However, we reverse with directions to correct two other sentencing errors that the parties concede. We accordingly affirm in part, reverse in part, and remand with directions.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Defendant's criminal history*

In 1983, while Maurice Walker (defendant) was a juvenile, he was adjudicated guilty of robbery. In 1992, as an adult, he was convicted of assault with a deadly weapon after he smashed a glass in his ex-girlfriend's face, breaking her nose and causing lacerations necessitating 100 stitches. In 1995, defendant was convicted of defrauding an innkeeper. In 2001 and again in 2007, he was convicted of felony drug possession, but successfully petitioned in 2015 to have the 2001 conviction reduced to a misdemeanor. In 2009, defendant was found guilty of a probation violation for making a criminal threat.

#### B. *Current offense*

In June 2012, defendant elbowed a woman in the mouth. When a 77-year-old man in a wheelchair tried to intervene to stop defendant's attack on the woman, defendant pulled out a knife and repeatedly stabbed the elderly man in the arm.

### II. Procedural Background

#### A. *Charges, conviction and initial sentence*

In July 2012, the People charged defendant with (1) assault with a deadly weapon (§ 245, subd. (a)(1)), and (2) elder abuse (§

3

368, subd. (b)(1)).[2]  As to both counts, the People alleged that defendant personally inflicted great bodily injury on a person 70 years or older (§ 12022.7, subd. (c)).  The People further alleged that defendant's 1983 juvenile adjudication for robbery and his 1992 conviction for assault with a deadly weapon constituted "strikes" within the meaning of our "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)), and that the 1992 conviction also qualified as a prior serious felony (§ 667, subd. (a)).  The People lastly alleged that defendant had served prior prison terms (§ 667.5, subd. (b)) for the 1992 assault with a deadly weapon conviction and a 2001 felony drug possession conviction (Health & Saf. Code, § 11350).

A jury convicted defendant of all charges, and found all allegations true.

The trial court sentenced defendant to state prison for 20 years.  Specifically, the court exercised its discretion to dismiss the 1983 juvenile adjudication as a "strike" because the court did not want to impose a "life sentence" in this case and because defendant was not convicted of any violent crimes between the 1992 conviction and the 2012 incident underlying this case.  The court then imposed a 20-year sentence on the assault with a deadly weapon conviction, and imposed but stayed under section 654 a 13-year sentence for the elder abuse conviction.

We affirmed the conviction and sentence in an unpublished opinion.  (*People v. Walker* (Feb. 24, 2014, B245405).)

---

[2]      The People also charged defendant with misdemeanor battery (§ 242), and the trial court imposed a six-month concurrent sentence after the jury convicted him of that misdemeanor.  Because that charge and sentence do not factor into any issue in this appeal, we will not discuss them further.

4

**B.** *First resentencing*

After defendant successfully petitioned to have the 2001 conviction reduced to a misdemeanor in 2015, he petitioned for a writ of habeas corpus seeking a resentencing where both one-year prior prison term enhancements would be dismissed. In 2017, the trial court dismissed the prior prison term enhancement for the 1992 assault with a deadly weapon conviction (because that conviction could not be doubly used to impose the five-year enhancement *and* the one-year enhancement), but refused to dismiss the prior prison term enhancement based on the now redesignated misdemeanor 2001 conviction. Defendant petitioned this court, and we issued an opinion directing the trial court to dismiss the prior prison term enhancement arising from the 2001 conviction and "to consider whether to conduct a full resentencing." (*People v. Walker* (2021) 67 Cal.App.5th 198, 208.)

**C.** *Second resentencing*

After entertaining briefing, the trial court conducted a full resentencing hearing in April 2022. Defendant asked the trial court (1) to dismiss both the great bodily injury and the prior serious felony enhancements in light of the changes made to section 1385 by the recently enacted Senate Bill No. 81, and (2) to use the middle-term as the base sentence for both counts in light of the changes made to section 1170 by the recently enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3). The trial court declined to exercise its discretion under section 1385 to dismiss either enhancement, reasoning that defendant posed a "public safety danger" because defendant had twice—in 1992 and again in 2012—engaged in conduct comprised of "uncivilized violent, absolutely unjustified behavior," such that it was not in the "interest of justice" to dismiss either

5

enhancement and thereby allow defendant to be released into the community any sooner, even though "multiple enhancements" were still being applied to defendant. The court granted defendant's request to use the middle-term as the base term, however.

The court then imposed a 16-year term in state prison. Specifically, the court imposed a 16-year sentence on the assault with a deadly weapon conviction comprised of a base term of six years (a middle-term three years doubled due to the prior strike), plus five years for the infliction of great bodily injury enhancement plus five years for the prior serious felony enhancement. The court imposed but stayed under section 654 an identically calculated 16-year sentence on the elder abuse conviction. The court calculated 158 days of actual custody credit and 24 days of conduct credit based on the time in custody between the date of defendant's arrest and the date of his sentencing in 2012.

### D.    *Appeal*

Defendant filed this timely appeal.

### DISCUSSION

Defendant argues that the trial court erred in (1) declining to strike the prior serious felony enhancement, (2) erred in imposing the prior serious felony enhancement twice—once for the assault with a deadly weapon count and again for the elder abuse count, and (3) erred in calculating custody credits by not calculating the time in custody between the date of his arrest and the date of his resentencing on April 8, 2022. The People concede that defendant's second and third arguments have merit, and we agree. (*People v. Sasser* (2015) 61 Cal.4th 1, 15 [prior serious felony enhancement does "'not attach to particular counts but

6

instead [is] added just once as the final step in computing the total sentence'"]; *People v. Buckhalter* (2001) 26 Cal.4th 20, 29 [when calculating credits at a resentencing, court must calculate them up to the date of the resentencing].)  As a result, we direct the trial court to impose the prior serious felony enhancement only once to defendant's total sentence (such that the court must not include that enhancement as part of the elder abuse sentence), and to recalculate the actual custody credits as well as conduct credits based on the time between the date of defendant's arrest and the date of resentencing.

As part of his first argument, the parties agree that defendant is entitled to be resentenced under the law as it exists today because his 2012 sentence was vacated.  (Accord, *People v. Padilla* (2022) 13 Cal.5th 152, 161-162.)  Under the current law, defendant raises two types of challenges:  (1) he challenges the trial court's interpretation of section 1385, and (2) he challenges the court's exercise of discretion under section 1385.  We review the first type of challenge de novo (*John v. Superior Court* (2016) 63 Cal.4th 91, 95), and review the second type for an abuse of discretion (e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 378).

# I.     Interpretation of Section 1385, as Modified by Senate Bill No. 81

As amended by Senate Bill No. 81, section 1385 grants trial courts "the authority"—and simultaneously imposes upon them a duty—"to strike or dismiss a[ sentencing] enhancement" (or, if they choose, the "additional punishment for that enhancement") if doing so is "in the furtherance of justice."  (§ 1385, subds. (b)(1), (a) [granting "authority"]; *id.*, subd. (c)(1) ["the court *shall dismiss* an enhancement if it is in the furtherance of justice to do so" (italics added)].)  Section 1385 makes clear that whether

7

dismissal of an enhancement is "in the furtherance of justice" is a "discretion[ary]" call for the trial court to make. (*Id.*, subd. (c)(2) ["In exercising its *discretion* . . ." (italics added)]; *id.*, subd., (c)(3) ["court may exercise its *discretion* at sentencing" or "exercis[e] its *discretion* before, during, or after trial or entry of plea" (italics added)].) Senate Bill No. 81 amended section 1385 to fine tune how a court is to exercise that discretion: Specifically, section 1385 now enumerates nine "mitigating circumstances," and mandates that the presence of any such circumstance "*weighs greatly* in favor of dismissing the enhancement[] unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2), italics added.) Dismissal endangers public safety if "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*) The two mitigating circumstances at issue in this appeal exist when:

> "(B) Multiple enhancements are alleged in a single case. *In this instance, all enhancements beyond a single enhancement shall be dismissed.* [¶] . . . [¶]
>
> "(H) The enhancement is based on a prior conviction that is over five years old."

(§ 1385, subd. (c)(2)(B) & (H), italics added.)

Defendant's appeal requires us to confront two questions about section 1385's meaning, although he only expressly raises the second question: (1) Does the sentence "all enhancements beyond a single enhancement shall be dismissed" in subdivision (c)(2)(B) of section 1385 obligate trial courts to dismiss all but one enhancement in every case, or do trial courts still retain discretion to determine whether dismissal endangers public

8

safety (and thus is in the furtherance of justice), and (2) What weight must a trial court give a mitigating circumstance in order to give it "great weight" within the meaning of subdivision (c)(2) of section 1385?

### A. *Does section 1385, subdivision (c)(2)(B), obligate trial courts to dismiss multiple enhancements in every case?*[3]

Our task in interpreting section 1385 is to "ascertain" and "give effect to the intended purpose" of our Legislature in enacting the statute. (*People v. Zambia* (2011) 51 Cal.4th 965, 976.) "[T]he text of a statute is often the best indicator of its meaning." (*North American Title Co., Inc. v. Gugasyan* (2021) 73 Cal.App.5th 380, 392.) If the text is "unambiguous," our task "begins and ends with th[e] text" (*Diaz v. Gill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 874-875); but if the text is ambiguous because it "permits more than one interpretation," then we "'may consider other aids, such as the statute's purpose, legislative history, and public policy'" as well as the general canons of statutory construction. (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1184; accord, *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.)

---

**3** Defendant argued to the trial court that he was entitled to have all but one of the enhancements stricken in light of the language in subdivision (c)(2)(B) of section 1385 providing that "all enhancements beyond a single enhancement *shall* be dismissed." (Italics in original.) Although defendant has elected not to press this argument on appeal—and, indeed, conceded at oral argument that it is incorrect—we nevertheless address it because it presents a question of statutory interpretation that has yet to be addressed in a published appellate decision.

9

In our view, the text and purpose of section 1385 in general, and Senate Bill No. 81 in particular, as well as the canons of statutory construction, counsel in favor of concluding that the phrase "all enhancements beyond a single enhancement shall be dismissed" in subdivision (c)(2)(B) does not obligate trial courts to automatically dismiss all but one enhancement whenever a jury finds multiple enhancements to be true.

The text of section 1385 favors this result. To be sure, on its face and considered in isolation, the phrase "all enhancements beyond a single enhancement shall be dismissed" seems to fairly unambiguously dictate that, if there is more than one enhancement, all but one "shall" be dismissed. But we are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation; instead, we are required to consider where it fits into the "'context of the statute as a whole.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 358; accord, *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381 (*Jarman*).) And, in this case, the context is critical. The phrase "all enhancements beyond a single enhancement shall be dismissed" is not a standalone mandate of section 1385. Instead, it appears in the statute appended to one of the nine mitigating circumstances— that is, it is appended to the circumstance that exists when "[m]ultiple enhancements are alleged in a single case." (§ 1385, subd. (c)(2)(B).) Section 1385 explicitly instructs that the existence of a mitigating circumstance—including the one for "multiple enhancements"—"weighs *greatly* in favor of dismiss[al]" of an enhancement as the court is exercising its discretion under section 1385 to evaluate whether dismissal is in the furtherance of justice by weighing enumerated and unenumerated mitigating factors against whether dismissal of an enhancement would

10

"endanger public safety." (*Id.*, subd. (c)(2) & (4) [indicating that statutorily enumerated list of mitigating factors is not exclusive], italics added.) If we were to read the phrase appended to the multiple enhancements mitigating factor as *automatically* mandating dismissal of all but one enhancement whenever multiple enhancements exist, then the existence of multiple enhancements would not "weigh greatly" in favor of dismissal—it would weigh *dispositively*. But that is not what the statute says, and we are not allowed to rewrite the statute. (*Jarman,* at p. 392.)

So what *does* the phrase "all enhancements beyond a single enhancement" mean when considered in its statutory context? It means what it says—namely, that if a trial court determines that the mitigating circumstance of "[m]ultiple enhancements . . . in a single case" exists and that dismissal of the enhancements will not "endanger public safety," then the court's discretion to dismiss is somewhat constrained by the phrase's mandate that the court must dismiss all but one of those multiple enhancements. This reading of the text of section 1385 is the only one to give effect to the phrase's mandate of dismissing all but one enhancement *and* to give effect to the phrase's placement within section 1385 and the language that mitigating factors be given "great" (but not dispositive) "weight."

Second, the purposes of section 1385 and Senate Bill No. 81 favor reading the phrase "all enhancements beyond a single enhancement shall be dismissed" to specify what must be dismissed *after* a trial court has exercised its discretion to decide whether dismissal is warranted in the first place. As the plain text of section 1385 repeatedly emphasizes, its purpose is to grant trial court *discretion* to dismiss enhancements. And the purpose

11

of Senate Bill No. 81, as reflected in the Legislative Digest, is to encourage exercise of that discretion by making dismissal mandatory if it is in the furtherance of justice to do so, and to specify the mitigating circumstances that are to be given great weight in that exercise of discretionary balancing. (Legis. Digest.)  Nothing in Senate Bill No. 81 indicates an intent to deprive trial courts of their discretion altogether—either generally or more specifically in the subset of cases where multiple enhancements are alleged.

Lastly, the canons of statutory construction favor reading the phrase "all enhancements beyond a single enhancement shall be dismissed" as we have.  Two canons in particular strongly *disfavor* adopting a construction of that phrase to mandate a rule of automatic dismissal of all but one enhancement whenever multiple enhancements are alleged.  Such a construction would hinge upon reading the phrase in isolation, but the canons counsel against that.  (*Jarman*, *supra*, 10 Cal.5th at p. 381.)  That construction would also require us to accept that our Legislature—rather than having a standalone section that says "If there's more than one enhancement, automatically dismiss all but one"—instead opted to embed that mandate as an addendum to one of nine mitigating factors to be given great weight in the context of a trial court's discretionary decision whether to dismiss.  In other words, if our Legislature was trying to implement a rule of mandatory and automatic dismissal, it picked a very circuitous way to do so.  The canons generally presume that our Legislature takes the more direct route to achieve its purpose, which counsels against construing statutes to have a meaning that requires more complex linguistic gymnastics to reach.  (*Brodie v. Workers' Comp. Appeals Bd.*

12

(2007) 40 Cal.4th 1313, 1328, fn. 10 ["[T]he principle of Occam's razor—that the simplest of competing theories should be preferred over more complex and subtle ones—is as valid juridically as it its scientifically."].)

**B.** ***What does section 1385, subdivision (c)(2), mean when it requires trial courts to give "great weight" to mitigating factors?***

Section 1385 specifies that a trial court "*shall* dismiss an enhancement if it is in the furtherance of justice to do so" (§ 1385, subd. (c)(1)); it enumerates specific mitigating circumstances; and it mandates that the "presence" of those circumstances must be "afford[ed] *great weight*" and "*weighs greatly* in favor of dismissing the enhancement[] *unless* the court finds that dismissal of the enhancement would endanger public safety" (*id.*, subd. (c)(2), italics added). Collectively, these provisions dictate that trial courts are to rebuttably presume that dismissal of an enhancement is in the furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal "would endanger public safety." Although a statute's use of the "shall / unless" dichotomy by itself does not necessarily erect a presumption in favor of whatever "shall" be done (e.g., *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370-1371; *People v. Buford* (2016) 4 Cal.App.5th 886, 902-903), section 1385's use of the additional phrase "great weight" goes a step further than just the "shall / unless" dichotomy and thereby erects a presumption in favor of the dismissal of the enhancement unless and until the court finds that the dismissal would "endanger public safety" as that term is defined in section 1385.

13

Defendant urges us to ascribe even greater weight to the phrase "great weight"—namely, that the existence of a mitigating circumstance obligates the trial court to dismiss an enhancement "unless there is substantial evidence of countervailing considerations" that justify imposition of the enhancement (and the resulting longer sentence). Defendant lifts this language from *People v. Martin* (1986) 42 Cal.3d 437, 448 (*Martin*), and argues that it is dispositive of what the phrase "great weight" means in section 1385 because *Martin* was interpreting that same phrase ("great weight") and because the sponsor of Senate Bill No. 81 inserted a letter into the Legislature's official record after the bill's passage indicating her belief that *Martin* provided the appropriate definition of "great weight."

We reject defendant's argument for two reasons.

First, *Martin*'s construction of the term "great weight" arose in a very different context. *Martin* dealt with a statute that obligated the Board of Prison Terms to review every sentence to determine if it was "'disparate in comparison with the sentences imposed in similar cases,'" and, if the Board made a finding of disparity, obligated a trial court to give "great weight" to the Board's finding when determining whether to recall and resentence that defendant. (*Martin*, *supra*, 42 Cal.3d at pp. 441-445.) Because the Board's finding of disparity reflected the "expert judgment" of an independent tribunal and because recall and resentencing involves one trial judge effectively overruling the determination of another, *Martin* construed the phrase "great weight" to obligate trial courts to "accept the board's finding of disparity unless based upon substantial evidence it finds that the board erred in selecting the appropriate comparison group . . . ." (*Id.* at p. 447.) *Martin*'s definition is inapt here because neither

14

of the considerations that informed *Martin*'s construction of the phrase "great weight"—the need to defer to a concordant body in another branch of government and the desire to avoid having one judge overrule another absent a finding of disparity by an independent body—is at play with section 1385, and hence *Martin*'s justification for construing "great weight" to place an especially onerous burden is wholly absent.  Instead, section 1385 accords "great weight" to the existence of a mitigating circumstance found—not by an independent tribunal—but rather by the very same trial judge who will be weighing that circumstance against the danger to the public.  In the context of section 1385, as noted above, the term "great weight" places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety.

Second, it is well settled that the insertion of a postenactment letter regarding the meaning of language in section 1385 is entitled to little if any weight, at least where (as here) the letter reflects the view of a single legislator rather than the legislative body that enacted the statute.  (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1063 ["We have frequently stated, moreover, that the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation."]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 905 ["Therefore, unless there is a showing that particular materials were part of the debate on the legislation and were

communicated to the Legislature as a whole before passage of the bill, they are not cognizable legislative history."], abrogated on other grounds by *People v. Lewis* (2021) 11 Cal.5th 952; *Simgel Co., Inc. v. Jaguar Land Rover North America, LLC* (2020) 55 Cal.App.5th 305, 321, fn. 1 ["Defendant asks us to take judicial notice of the legislative history of Civil Code section 1791.1. . . . We deny the request. The document defendant cites is a letter from the staff of the bill's sponsor, responding to a letter from an attorney for a dealers' association. There is no indication the letter was communicated to the Legislature as a whole. For that reason, it does not constitute cognizable legislative history."].) Defendant urges that the letter is entitled to more weight for two reasons. To begin, he argues that the letter was published in the Senate's register by unanimous consent. Yet an agreement to publish a letter written by one legislator does not constitute an endorsement by the Legislature of the views espoused in that letter. Further, defendant argues that neither the Assembly nor the Governor expressed any disagreement with the sponsor's letter. Yet the Assembly and Governor had no reason to disagree with a letter that was not part of the bill they enacted or signed.

## II. Abuse of Discretion

It is undisputed that two mitigating circumstances enumerated in section 1385 are present in this case—namely, that (1) multiple enhancements (namely, the enhancements for great bodily injury and for a prior serious felony) have been imposed (§ 1385, subd. (c)(2)(B)), and (2) the prior serious felony enhancement is based on a conviction that is over five years old (because the 1992 conviction is now 30 years old) (*id.*, subd. (c)(2)(H)). Consequently, whether the trial court abused its discretion in declining to dismiss the prior serious felony

16

enhancement turns on whether the trial court abused its discretion in "find[ing] that dismissal of [that] enhancement would endanger public safety" because "there is a likelihood that [its] dismissal . . . would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)

We conclude there was no abuse of discretion.  In finding that defendant's earlier release from prison "would result in physical injury or other serious danger to others," the trial court here cited defendant's two unprovoked and vicious attacks in 1992 and 2012—the first involving carving up his female victim's face with cut glass and the second involving repeatedly stabbing his elderly and immobile victim's arm with a knife merely for trying to stop defendant from battering another woman.  These incidents evince defendant's propensity to physically injure others and thus to pose a serious danger to them.  Although, as defendant notes, he confined his criminal behavior between the 1992 and 2012 attacks to mostly nonviolent conduct, he nevertheless reverted back to extreme violence in 2012.  The trial court had a basis for believing that same risk exists today and that releasing him any earlier would endanger public safety.

Defendant asserts that the trial court abused its discretion for three further reasons.  First, defendant argues that the trial court made no express finding that dismissal of the enhancements would "endanger public safety" and instead found only that dismissal would not be in the furtherance of justice.  However, because whether dismissal of an enhancement is "in the furtherance of justice" is an ultimate finding that necessarily rests on a subsidiary finding that dismissal would endanger public safety, we may imply a finding of the latter from its express finding of the former.  (E.g., *People v. Calhoun* (1983) 141

17

Cal.App.3d 117, 126; *People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1123.) Second, defendant seems to suggest that the trial court was not allowed to look to the conduct underlying the 1992 conviction in determining whether defendant's earlier release would endanger public safety because that conviction was more than five years old and hence qualified as a mitigating circumstance. This suggestion would require us to assume that an enhancement *has* been dismissed when trying to decide *whether* it should be dismissed. To us, this makes no sense because it puts the cart before the horse. Lastly, defendant argues that the trial court was also not allowed to look to the conduct underlying the convictions in this case because the underlying facts were already used to impose the great bodily injury enhancement, and section 1385's presumptive prohibition against multiple enhancements means that the facts used to justify the great bodily injury enhancement cannot be used to rebut that presumption. We reject this argument as well. It seems to rest on an analogy to the prohibition against using the same facts for a "dual use" in sentencing. But there was no impermissible dual use: Although the great bodily injury to the victim in this case was part of the gestalt of facts underlying this crime, what the trial court relied upon to overcome the presumption favoring dismissal was the entirety of the attack and its unprovoked and extreme nature—not the amount of injury inflicted.

18

## DISPOSITION

The judgment is reversed in part to the extent it failed to reflect the proper custody credits earned by defendant, and the trial court is directed to calculate the appropriate credits consistent with the views expressed in this opinion. The trial court is also directed to impose an 11-year sentence on the elder abuse count. The trial court is to issue an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. We affirm the judgment in all other respects.

## <u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

19