**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose De LA JARA, Defendant–Appellant.**

**No. 90–50400.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1992.

Decided Aug. 21, 1992.

---

**748**

Lupe Martinez, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Karen J. Immergut, Asst. U.S. Atty., Major Narcotics Section, Los Angeles, Cal., for plaintiff-appellee.

Before: POOLE, WIGGINS and LEAVY, Circuit Judges.

POOLE, Circuit Judge:

I.

Appellant Jose de la Jara, a Peruvian businessman, appeals from his jury conviction on five counts of structuring financial transactions and aiding and abetting in violation of 31 U.S.C. § 5324(3) and 18 U.S.C. § 2, and on two counts of money laundering in violation of 18 U.S.C. § 1956(a)(3). Appellant's indictment was the fruit of a lengthy investigation into his financial dealings, which culminated in the execution of arrest and search warrants at his home and office by law enforcement personnel from several state and federal agencies on September 21, 1989. Appellant was interrogated at that time for a period of several hours. The search of appellant's home uncovered a letter to appellant from his attorney dated March 25, 1987.

De la Jara moved to suppress statements made in the course of the interrogation, alleging that questioning had continued despite his invocation of the right to counsel.

The district court denied the motion, finding that de la Jara's invocation of the right to counsel was "ambiguous and equivocal." The court concluded that agents had acted properly in attempting to clarify the equivocal request, and that appellant had subsequently waived his right to counsel. At trial, the letter to de la Jara from his attorney was admitted into evidence over appellant's objection.

De la Jara now appeals the admission of this letter and the denial of the motion to suppress.

II.

The court allowed the government to introduce at trial the letter to de la Jara from his attorney, ruling *sua sponte* that the letter came within the crime-fraud exception to the attorney-client privilege. Appellant alleges that the district court erred by failing to require the prosecution to make out a threshold showing supporting *in camera* review of the letter before determining whether the exception applied.

In order to successfully invoke the crime-fraud exception to the attorney-client privilege, the government must make a prima facie showing " 'that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity.' " *United States v. Zolin*, 905 F.2d 1344, 1345 (9th Cir.1990) (quoting *United States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977)), *cert. denied*, —— U.S. ——, 111 S.Ct. 1309, 113 L.Ed.2d 244 (1991). De la Jara correctly argues that under *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), the district court could not consider the contents of a privileged letter in assessing the government's prima facie case until the government had, as a threshold matter, presented nonprivileged evidence "sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Id.* at 574–575, 109 S.Ct. at 2632.

The government would have us hold that a threshold showing was not required in this case since the purpose of the require-

ment was to prevent abuses of *in camera* review. Here, according to the government, there was no such danger since the government and the court already had access to the document and knew what it contained. This argument misunderstands the holding of *Zolin.* It is the privileged nature of the document, not the ease of access, which determines whether a court has recourse to it in determining whether the crime-fraud exception should apply. *Zolin,* 491 U.S. at 574, 109 S.Ct. at 2632 ("[T]he party opposing the privilege may use any *nonprivileged* evidence in support of its request for *in camera* review") (emphasis supplied); Fed.R.Evid. 104(a) ("Preliminary questions concerning ... the existence of a privilege ... shall be determined by the court.... In making its determination it is not bound by the rules of evidence *except those with respect to privileges* ") (emphasis supplied).

The government likewise oversimplifies the issue by arguing that the threshold requirement serves only to prevent "fishing expeditions" or "jeopardy to the national security." The threshold requirement is designed to advance "the policy of protecting open and legitimate disclosure between attorneys and clients." *Zolin,* 491 U.S. at 571, 109 S.Ct. at 2630. This important goal would be compromised were we to allow *in camera* review of privileged materials as readily as the government requests.

Thus the district court, before reviewing the letter, should have required a threshold showing " 'of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin,* 491 U.S. at 572, 109 S.Ct. at 2631 (quoting *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo.1982)). The district

court abused its discretion by declining to do so.[1]

We may, however, affirm the district court "on any ground fairly supported by the record." *Lee v. United States,* 809 F.2d 1406, 1408 (9th Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). The foregoing discussion assumes that the letter was privileged. The government, however, argues persuasively that the attorney-client privilege was waived through de la Jara's failure to assert it in a timely matter. Whether the attorney-client privilege has been waived is a mixed question of fact and law which we review *de novo. United States v. Plache,* 913 F.2d 1375, 1379 (9th Cir.1990).

■ Although the privilege may be waived by the voluntary production of otherwise privileged documents, it is clear that the privilege was not lost through the government's discovery of the letter in the course of executing its search warrants. We held in *Transamerica Computer v. International Business Machines,* 573 F.2d 646, 651 (9th Cir.1978), for example, that "a party does not waive the attorney-client privilege for documents which he is *compelled* to produce." The government asks us to hold, however, that the privilege was waived when appellant failed to pursue the timely return of the letter.[2]

■ In determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure are to be considered. *Transamerica Computer,* 573 F.2d at 652; *United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir.1987), *aff'd in part and vacated in part,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). We have previously held that the attorney-client privilege may be waived by implication, even when the disclosure of the privileged material was "inadvertent" or

1. Were we not to uphold the district court's decision to admit the letter on other grounds, we would be required to remand the case to the district court "to determine in the first instance[ ] whether [the government] has presented a sufficient evidentiary basis for *in camera* review, and whether, if so, it is appropriate for the district court, in its discretion, to grant such

review." *Zolin,* 491 U.S. at 575, 109 S.Ct. at 2632.

2. The government notes that appellant could have filed, for example, a motion to suppress the letter under Fed.R.Crim.P. 12(b)(3), or a motion for return of property under Fed. R.Crim.P. 41(e).

involuntary. *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir.1981). When the disclosure is involuntary, we will find the privilege preserved if the privilege holder has made efforts "reasonably designed" to protect and preserve the privilege. *See Transamerica Computer*, 573 F.2d at 650. Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.

■ De la Jara did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence. By immediately attempting to recover the letter, appellant could have minimized the damage caused by the breach of confidentiality. As a result of his failure to act, however, he allowed "the mantle of confidentiality which once protected the document[ ]" to be "irretrievably breached," thereby waiving his privilege. *Permian Corp. v. United States*, 665 F.2d 1214, 1220 (D.C.Cir.1981) (quoting *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C.Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979)). The district court thus committed no reversible error in permitting the letter to be introduced into evidence.

### III.

■ De la Jara contests the district court's denial of his motion to suppress statements made following his arrest. In determining whether de la Jara invoked the right to counsel, thereby necessitating suppression, we review his words " 'understood as ordinary people would understand them.' " *Robinson v. Borg*, 918 F.2d 1387, 1391 (9th Cir.1990) (quoting *Connecticut v. Barrett*, 479 U.S. 523, 529, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987)), *cert. denied*, — U.S. —, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991). If the defendant's request, understood in this way, clearly "expresse[s] his desire to deal with the police only through counsel," then all interrogation must cease. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d

378 (1981). If the desire is not clearly expressed, then further questioning must be limited to clarifying the defendant's intention. *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir.1985). We review for clear error the district court's factual finding concerning the words a defendant used in invoking the right to counsel. Whether those words actually invoked the right to counsel is a legal determination, reviewed *de novo*. *Robinson*, 918 F.2d at 1390.

■ Our review is complicated by the fact that de la Jara's request was made in Spanish. At the hearing on the motion to suppress, the court interpreter noted that de la Jara's statement to the interrogating officer ("debo yo llamar a mi abogado") could be either a question or assertion depending on inflection, and that the meaning would turn to some extent on the context. The interpreter offered the following possible translations of the phrase:

(1) "Can I call my attorney?"

(2) "Should I call my attorney?"

(3) "I should call my lawyer."

We note that the meaning of de la Jara's statement is crucial, as the alternate translation have different legal effects. If understood as "Can I call my lawyer?" or "I should call my lawyer," then de la Jara would have clearly invoked the right to counsel. *See Robinson*, 918 F.2d at 1393 ("I have to get me a good lawyer, man. Can I make a phone call?" is unequivocal request); *Smith v. Endell*, 860 F.2d 1528, 1529, 1531 (9th Cir.1988), *cert. denied*, — U.S. —, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990) ("Can I talk to a lawyer?" is unequivocal request); *Shedelbower v. Estelle*, 885 F.2d 570, 571, 573 (9th Cir.1989) ("I think I should call an attorney" is unequivocal request), *cert. denied*, — U.S. —, 111 S.Ct. 975, 112 L.Ed.2d 1060 (1991). If, however, de la Jara were properly understood to have asked "Should I call my lawyer?", then the question might not even constitute an equivocal invocation, and thus might require no clarification by the interrogating officers. In *Norman v. Ducharme*, 871 F.2d 1483 (9th Cir.1989), *cert. denied*, 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990) and 494 U.S. 1061, 110

S.Ct. 1538, 108 L.Ed.2d 777 (1990), for example, we observed that when the defendant asked a police officer "whether he should get an attorney," the question "did not rise to the level of an equivocal request for counsel." *Id.* at 1484, 1486.

Under the deferential standard of review governing the district court's findings of fact, we must affirm "unless we have the 'definite and firm conviction' that a mistake has been made." *Woods v. Graphic Communications*, 925 F.2d 1195, 1199 (9th Cir. 1991) (quoting *Vasconcelos v. Meese*, 907 F.2d 111, 112 (9th Cir.1990)). We are left with just such a conviction in this case.

At the suppression hearing, de la Jara testified that he had requested to speak to his attorney several times, saying "I should have my lawyer present." He also testified that he had told his secretary, Rose Alvarez, to call his attorney, but that she said she was not able to do so. Alvarez corroborated de la Jara's version of events, testifying that he had asked her twice to call his attorney, but that she was prevented from doing so by the officers.

Officer Perez of the Santa Ana Police Department composed a police report within four days of the execution of the search warrant on September 21, 1989, in which he recalled:

> I stood by the front of DELAJARA's office along with an unknown agent. DELAJARA was being uncuffed by Agent Rivera. I started to close the door slightly when I heard DELAJARA say in Spanish that he wanted to call his attorney. I told the agent who was standing outside the office that it sounded like DELAJARA was invoking his rights because he just asked to call his attorney. The agent asked me if that's what I heard and I said "yes."

Officer Perez then explained that a warrant was sought to search the second floor of de la Jara's offices because he believed that permission for a consent search could not be obtained as a result of de la Jara's invocation of the right to counsel.

In February of 1990, an Assistant United States Attorney drafted a declaration for Officer Perez, in which he embellished his report by explaining that he had only heard the Appellant say "speak to an attorney," and had assumed that he was invoking his right to an attorney. Perez' declaration read:

> Shortly thereafter I heard the defendant say something about speaking to an attorney. At that time, the door to the defendant's office was partially open and I was standing approximately 10–15 feet from where the defendant and Agent Rivera stood. I was primarily directing my attention to an individual who was in the adjacent office as well as another employee who I was guarding. There were other law enforcement officers in the area who were talking at the time. SA Rivera appeared to be unhandcuffing the defendant at approximately the time the defendant made the statement. I was unable to hear the exact words which preceded "speak to an attorney," because my attention was directed to the other employees whom I was responsible for guarding, and because there were other police officers talking and walking around in the hallway. Because I heard the defendant say something about wanting an attorney, I assumed he had invoked his rights and told the officer standing next to me that it "sounded like De La Jara was invoking his rights." I then wrote this statement in a police report. In writing the report, I specified that it "sounded" like the defendant was invoking his rights because I did not hear his exact words and thus was not positive that he had in fact invoked his right to an attorney.

The district court, without elaboration, rejected Officer Perez' contemporaneous report in favor of his in-court testimony, which followed the version of events recited in the declaration drafted in preparation for the motion to suppress. We are left with a definite and firm conviction that the court erred in doing so. In his initial report, Agent Perez was unequivocal: "I heard DELAJARA say in Spanish that he wanted to call his attorney." Even in the next sentence of the report, while perhaps expressing uncertainty about the legal ef-

fect of de la Jara's statement, Perez wrote with certainty that de la Jara had asked to speak to an attorney: "I told the agent who was standing outside the office that it sounded like DELAJARA was invoking his rights *because he just asked to call his attorney.* The agent asked me if that's what I heard and I said 'yes.'" (Emphasis supplied). We find incredible the government's subsequent attempts, made while appellant's motion to suppress was pending, to inflect Perez' statement with dubiety.

We conclude that de la Jara's words understood as ordinary people would understand them, and as Officer Perez did understand them, clearly invoked the right to counsel. Because interrogation continued in violation of de la Jara's rights, the statements made should have been suppressed. *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885.

■ The prosecution argues in the alternative that even if there was error in admitting appellant's statements, the error was harmless. The burden is on the government to prove " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Collazo v. Estelle,* 940 F.2d 411, 424 (9th Cir.1991) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)), *cert. denied,* — U.S. —, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992). The statements elicited from de la Jara were used at trial to show that he had lied to investigators concerning the money transactions in question in the money laundering counts, and to impeach him during cross-examination. The government contends that the error was harmless since statements obtained in the interrogation were only introduced in reference to four counts of the indictment, and appellant was only convicted of two of these counts. This observation, of course, cuts both ways. It could be indicative of the fact that the statements were not particularly damning, or it could signify that the appellant may not have been convicted of any of the counts absent the evidence. In any event, this argument falls far short of carrying the government's burden of showing beyond a reasonable doubt that the statements did not contribute to the verdicts. We thus have no alternative but to reverse appellant's conviction to afford him a new trial untainted by the use of his illegally obtained statements.

### IV.

The district court's decision to admit appellant's letter is AFFIRMED. Appellant's conviction, however, is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.