Filed 5/13/21  Novartis Pharmaceuticals v. Superior Court CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>Respondent;<br><br>T.H. et al.,<br><br>Real Parties in Interest. | D077934<br><br>(San Diego County Super. Ct. No. 37-2013-00070440-CU-MM-CTL ) |

ORIGINAL PROCEEDING in mandate.  Ronald F. Frazier, Judge.  Petition denied.

Morrison & Foerster and Eric M. Bosman, Julie Y. Park, Alexandra L. Preece; Hollingsworth and Robert E. Johnston, Kathryn Jensen, Gregory S. Chernack, for Petitioner.

Thorsnes Bartolotta McGuire and Kevin F. Quinn, Kyle Lee Pederson, Jarrett Scott Charo; Singleton Schreiber McKenzie & Scott and Brett Justin Schreiber, Benjamin Israel Siminou, for T.H. and C.H., Real Parties in Interest.

No appearance for Respondent.

Petitioner and defendant Novartis Pharmaceuticals Corporation (Novartis) challenges an order of respondent San Diego Superior Court denying in part its motion to seal the contents of an e-mail as an attorney-client privileged communication. The court denied the motion on grounds Novartis had waived the attorney-client privilege by failing to request the e-mail's prompt return once it was used during a deposition by counsel for plaintiffs and real parties in interest T.H. and C.H., suing via their guardian ad litem (plaintiffs). In a petition for writ of mandate, Novartis contends it preserved the attorney-client privilege by objecting and preventing plaintiffs' counsel from further questioning the deponent about the e-mail, which was marked privileged and confidential, and by triggering a provision in the parties' stipulated protective order assertedly putting the burden on the plaintiffs to return the document and seek a resolution of the issue. Novartis argues writ relief is necessary because once a privileged communication is disclosed there is no way to undo the harm that extends to other actions against it, and the disclosure undermines the privilege as well as the attorney-client relationship. We conclude Novartis did not take reasonable remedial steps to protect and preserve its claim of privilege, and thereby waived it. Accordingly, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs sued Novartis as well as other companies and individuals, alleging they had been diagnosed with autism resulting from exposure *in*

2

*utero* to terbutaline, a drug manufactured by Novartis and prescribed "off-label" to delay premature labor.

During the course of the litigation, the parties stipulated to a protective order addressing the inadvertent production of confidential information. In part, the protective order (par. 7(c)) provides: "Nothing in this stipulated protective order shall require disclosure of information which is protected by the attorney-client privilege, work product immunity, or other privilege or immunity. The inadvertent production or disclosure by a producing party of materials subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection ('privileged information'), despite the producing party's reasonable efforts to prescreen such material prior to production, will not waive the applicable privilege and/or protection, nor shall it result in a subject-matter waiver, in this litigation or in any other state or federal proceeding, if a request for return of such inadvertently produced privileged information ('clawback') is made promptly after the producing party learns of its inadvertent production. The producing party need not provide the basis for its privilege assertion in its notice to a receiving party.

"If a receiving party, upon review of materials produced to it, becomes aware that any portion of such material is protected by the attorney-client privilege, work product immunity, or other privilege or immunity, the receiving party shall promptly notify the producing party of the specific materials which could be so considered and will not use such materials for any purpose until the issue has been resolved by agreement of the parties or by order of the court. Each receiving party must immediately return such materials and all copies to the producing party, except for any pages containing privileged markings by the receiving party, which shall instead be

3

destroyed and certified as such by the receiving party to the producing party."
(Some capitalization omitted.)

On January 15, 2020, plaintiffs took the deposition of David Catalano, a Novartis executive. During the deposition, plaintiffs' counsel questioned Catalano about an October 2001 e-mail chain, which included an e-mail from Sean Reilly that Novartis had marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER."[1] Novartis's counsel objected and instructed Catalano "not to answer on the grounds it seeks information about attorney-client privileged communications, which are clearly stated on the document itself." Counsel continued: "We can take up later what the consequences of this disclosure are, but I'm not going to allow him to answer this question without a court order requiring him to do so." Plaintiffs' counsel asked if Reilly was an attorney, and Novartis's counsel responded, "He is. And the document is stated privileged and confidential." Counsel confirmed the deponent would follow the instruction and stopped questioning about Exhibit 12.

On May 1, 2020, plaintiffs included Exhibit 12 in papers opposing Novartis's summary judgment motion. On May 28, 2020, Novartis's counsel Kathryn Jensen invoked the protective order's "clawback" provision and demanded that plaintiffs return or confirm the destruction of Exhibit 12 and

[1] At the hearing on Novartis's motion to seal, its counsel pointed out that the document at issue includes three e-mails: one from another executive to Catalano, Catalano's response to a different recipient but including Reilly, and Reilly's e-mail response to Catalano. Counsel explained the only e-mail it claimed was privileged was the latter e-mail from Reilly to Catalano. The parties refer to this e-mail chain as "Exhibit 12," based on the number plaintiffs gave the document when it was submitted as an exhibit in opposition to Novartis's summary judgment motion (the e-mail was marked Exhibit 5 during the deposition). We likewise at times refer to the e-mail in question as Exhibit 12.

4

all copies within five days. The next day, plaintiffs' counsel advised Jensen that Exhibit 12 had been brought to Novartis's attention in January 2020 during Catalano's deposition and as five months had passed since then, under the protective order its failure to seek a prompt return of Exhibit 12 waived the attorney-client privilege.

Days later, Novartis moved to seal portions of plaintiffs' opposition to the summary judgment motion, including Exhibit 12. Novartis argued Exhibit 12 referenced or contained proprietary and trade secret information, submitting declarations from its attorney Julie Park, and a regulatory director, Susan Brabant. Plaintiffs responded to Novartis's motion in part by pointing out that Novartis did not mention in its motion that Reilly was an in-house counsel, nor did Novartis argue the e-mail should be sealed so as to protect the attorney-client privilege. Plaintiffs argued Novartis could not establish the e-mail was subject to attorney client privilege, that is, that its "dominant purpose" was to provide Novartis with legal advice. Specifically plaintiffs argued: (1) the e-mail was not sent in the context of a discussion regarding whether Novartis should seek approval from the Food and Drug Administration (FDA) for terbutaline; (2) Novartis had voluntarily disclosed the substance of the e-mail to the FDA eight years earlier; and (3) Novartis's conduct in seeking to claw back Reilly's e-mail was inconsistent with a belief the communication was a privileged one between lawyer and client, as Novartis had not sought to claw back Catalano's e-mail to Reilly. According to plaintiffs, internal Novartis memos confirmed that the e-mail did not contain privileged information but instead referenced a business decision Novartis made and disclosed to the FDA long in the past. Plaintiffs further argued even if a privilege applied, Novartis waived it by voluntarily disclosing Catalano's half of the communication, failing to promptly ask for

5

the e-mail's return after it learned it had been produced, and failing to assert attorney-client privilege in its motion to seal, which was filed days after Novartis notified plaintiff it was seeking the document's return. Plaintiffs asked the court to deny Novartis's motion to seal.

In its reply, Novartis argued the e-mail was privileged and it did not waive the privilege; that it was plaintiffs' counsel who failed to abide by their obligations under *State Compensation Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 652 (*State Fund*) to stop using the document, which was clearly marked privileged. Novartis submitted a declaration from Brabant stating, "During the relevant time period, and currently, Sean Reilly served as [Novartis's] in-house counsel providing legal advice on a variety of issues."

In July 2020, Novartis's counsel advised the trial court that it wished to address the matter in an upcoming discovery conference. On the court's request for further briefing on the issue, Novartis argued that the fact the document was marked privileged and confidential put plaintiffs on notice and triggered their counsel's obligation under the protective order and *State Fund* to notify Novartis of the issue and refrain from using the document. Novartis further argued it had no obligation to seek Exhibit 12's return once it alerted plaintiff's counsel the e-mail was privileged; that it was plaintiffs' burden under the protective order to cease any use of the document and seek a resolution with Novartis or the court. Novartis argued its May 2020 letter, as well as its assertion of privilege immediately upon discovery of the document's production during Catalano's deposition, confirmed it had not relinquished or abandoned the privilege.

The trial court denied Novartis's motion as to the e-mail within Exhibit 12. The court found Novartis "waived privilege as to the contents of the

6

e[-]mail on page 2 of Exhibit 12 . . . . Both sides discovered at the same time that the document may have been inadvertently produced during the deposition of Mr. Catalano on January 15, 2020. Although defendant's counsel objected at the deposition, the parties' stipulated protective order requires that when an inadvertent production occurs, it shall not result in waiver 'if a request for return of such inadvertently produced privileged information ("clawback") is made promptly after the producing party learns of its inadvertent production.' . . . In the absence of evidence of defendant's prompt request for return of the inadvertent production, the court concludes defendant abandoned its assertion of privilege and that at this point, the privilege has been waived. In its motion to seal itself, filed many months after the inadvertent production discovery, there was no reference to attorney client privilege and no requested 'clawback[.]' By separate order, the court stayed entry of this order as it relates to Exhibit 12 and directed that Exhibit 12 shall remain confidential and will not be entered into the public record during the pendency of the stay." (Some capitalization omitted.)

Novartis brought this petition for writ of mandate asking this court to direct the trial court "to vacate its decision holding that [Novartis] waived any applicable privilege to Exhibit 12." Novartis argues it preserved the attorney-client privilege not only by marking the document "privileged and confidential" and objecting at Catalano's deposition, preventing plaintiffs' counsel from further questioning on Exhibit 12, but also by designating the deposition itself as confidential. Novartis maintains that under the protective order and California case law, it was plaintiffs' obligation either to return Exhibit 12 or to seek a judicial determination on Novartis's claim of privilege; that Novartis was not required to do anything further to preserve

7

its claim.  We issued an order to show cause and granted Novartis's motion to file exhibits under seal.

## DISCUSSION

### I. *Standard of Review*

The parties dispute the applicable standard of review.  Novartis argues this court reviews the question of whether it waived the attorney-client privilege de novo as a mixed question of law and fact.  Plaintiffs maintain that we must review the trial court's finding of waiver for substantial evidence.

Whether a party has waived a privilege is often a mixed question of fact and law.  (*Behunin v. Superior Court* (2017) 9 Cal.App.5th 833, 843.)  " 'Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied.' " (*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1235-1236, citing *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)  Where historical facts are undisputed, the question is whether, given those historical facts, the holder of the privilege has waived it.  (See *McKesson*, at p. 1236.)  The "inquiry 'requires a critical consideration, in a factual context, of legal principles and their underlying values' " and thus it is "predominately legal, and we independently review the trial court's decision." (*Ibid.*; accord, *Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672, 678 (*Regents*) [reviewing finding of fact as to why defendants produced privileged documents for substantial evidence, but reviewing de novo the "legal conclusions to be drawn from that finding"].)

Here, the background facts are not in dispute.  Plaintiffs in their return admit that the e-mail about which their counsel sought to question Catalano

8

was from Novartis's in-house counsel to other Novartis employees and marked privileged and confidential. They further admit the allegation that "[Novartis] was unaware Exhibit 12 had been inadvertently produced." Plaintiffs deny the implication that they were "aware prior to January 15, 2020, that the Reilly e[-]mail had been produced to them" or that they violated the protective order. Because the trial court made a factual finding that both sides discovered the inadvertent production at the same time, we review that finding for substantial evidence, resolving all conflicts and inferences in support of the court's order. (See *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1105 (*McDermott*).) But there are no disputed facts and inferences about whether Novartis's original production was inadvertent, or whether it intended to waive the privilege at the point when the document first got into plaintiffs' counsel's possession, as there were in *McDermott*.[2] Novartis's conduct during and after Catalano's deposition—its actions or inaction—is not contested.

---

[2] In *McDermott*, the privilege holder, Richard Hausman, forwarded to a third party an e-mail from his lawyer containing legal advice. (*McDermott, supra*, 10 Cal.App.5th at p. 1094.) The third party passed it on to others, including a relative who was trying to informally mediate Hausman's probate dispute, and who had distributed copies to opposing parties in the matter. (*Ibid*.) Hausman, who was 80 years old and suffered from limited dexterity due to multiple sclerosis when he forwarded the e-mail, later testified he did not intend to forward the e-mail to the third party and did not know he had done so until a year later. (*Ibid*.) When opposing counsel in the probate matter found the e-mail among documents as he was preparing discovery responses, he notified Hausman's attorney but asserted Hausman had waived the privilege by forwarding it. (*Id*. at p. 1095.) The Court of Appeal faced with those facts explained that the substantial evidence standard of review applied in view of the conflicting evidence and competing inferences on whether Hausman intended to waive the privilege. (*Id*. at p. 1102.)

Plaintiffs correctly assert that even if the underlying facts are admitted or undisputed, an appellate court may not substitute its deductions for those reasonably drawn by the trial court. But plaintiffs do not explain what inferences the trial court drew from the undisputed facts about Novartis's production. As the court drew legal conclusions concerning waiver from the uncontested facts, our role, as stated above, is to review those determinations de novo. (*Regents, supra,* 165 Cal.App.4th at p. 678.)

To the extent a determination of waiver is based on construction or interpretation of the stipulated protective order, this court applies the usual rules of contract interpretation. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [a stipulation is a contract governed by usual rules of contract construction]; *Los Angeles City School Dist. of Los Angeles County v. Landier Management Co.* (1960) 177 Cal.App.2d 744, 750-751.) Absent extrinsic evidence surrounding the circumstances under which it was made, we independently construe the protective order. (See *Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.)

II. *Attorney-Client Privilege, Waiver, and the State Fund Rule*

"Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." ' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146.) " '[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' " (*Costco Wholesale Corp. v. Superior Court* (2009) 47

10

Cal.4th 725, 732 (*Costco*); *DP Pham, LLP v. Cheadle* (2016) 246 Cal.App.4th 653, 664.)  Courts have no power to expand or limit the privilege by creating exceptions.  (*McDermott*, *supra*, 10 Cal.App.5th at p. 1100, citing *Costco*, at p. 739.)

"The attorney-client privilege protects the transmission of information regardless of the content or whether the information is discoverable from other sources.  [Citation.]  It attaches to a confidential communication between the attorney and the client and bars discovery of the entire communication, including unprivileged material.  [Citation.]  ' "Neither the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information." '  [Citation.]  . . .  ' "[T]he privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client.  In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy." ' "  (*DP Pham, LLC v. Cheadle*, *supra*, 246 Cal.App.4th at p. 664.)

"[I]t is settled that a corporate client . . . can claim the privilege." (*Costco*, *supra*, 47 Cal.4th at p. 733; *Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4th 1214, 1225.)  " 'The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship.  [Citations.]  Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or

11

that the privilege does not for other reasons apply.'" (*DP Pham, LLC v. Cheadle, supra*, 246 Cal.App.4th at p. 665, quoting *Costco*, 47 Cal.4th at p. 733; *Wood v. Superior Court of San Diego County* (2020) 46 Cal.App.5th 562 580.)

The holder of the privilege—here Novartis—may waive it. (Evid. Code, §§ 912, 953 [holder of the privilege is the client]; see *Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176,1186 (*Ardon*); *McDermott, supra*, 10 Cal.App.5th at p. 1101; *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 112; *State Fund, supra*, 70 Cal.App.4th at p. 652; *Transamerica Title Ins. Co. v. Superior Court* (1987) 188 Cal.App.3d 1047, 1052.) Evidence Code section 912, subdivision (a) provides that "the right of any person to claim [the] . . . lawyer-client privilege . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has legal standing and the opportunity to claim the privilege." "What constitutes a significant part of the communication is a matter of judicial interpretation; however, the scope of the waiver should be determined primarily by reference to the purpose of the privilege." (*Transamerica*, at p. 1052; see also *Fish v. Superior Court* (2019) 42 Cal.App.5th 811, 819 [involving psychotherapist-patient privilege].) Waiver may occur by tendering certain issues and by conduct inconsistent with claiming the protection. (*Regents, supra*, 165 Cal.App.4th at p. 679.)

Under the statute, a holder's failure to claim attorney-client privilege in certain circumstances can be deemed consent to disclosure. (See *Kerner v.*

12

*Superior Court, supra*, 206 Cal.App.4th at p. 112; *Regents, supra*, 165 Cal.App.4th at p. 679.)  Consent of the privilege holder can be "manifest[ed] through words or conduct . . . that the communication may be disclosed by another." (*State Fund, supra*, 70 Cal.App.4th at p. 652 [Evidence Code section 912 "indicates that we are to look to the words and conduct of the holder of the privilege to determine whether a waiver has occurred"].)  A waiver may be found "if the holder, in a proceeding in which he or she has the legal standing and opportunity to claim the privilege, fails to claim the privilege knowing that the disclosure of privileged information is sought." (*Kerner*, at p. 112; see also *Calvert v. State Bar* (1991) 54 Cal.3d 765, 780.)  "If these conditions are satisfied, the holder's failure to assert the privilege through his or her attorney constitutes a waiver if the holder had an opportunity to consult with the attorney." (*Kerner*, at p. 112.)  In *Calvert*, the client-holder of the privilege was held to have waived it when, after the privilege issue was raised at an attorney disciplinary hearing, the client consulted with her attorney regarding the issue and did not instruct the attorney to claim the privilege during the attorney's testimony. (*Calvert*, at p. 780.)  The attorney then testified she was " 'not sure' " whether her testimony created a conflict or jeopardized the client's case. (*Ibid*.)  The "equivocal statement by [the] attorney after consultation with [the client] amounts to a failure to claim the privilege when the opportunity arose." (*Ibid*.)

A waiver can occur even when there is an inadvertent or unintentional disclosure by the privilege holder, if the privilege holder does not take reasonable steps thereafter to rectify the situation.  (See *Regents, supra*, 165 Cal.App.4th 672.)  In *Regents*, this court addressed such circumstances in the context of plaintiffs' request for documents that defendant energy suppliers

13

had previously disclosed to an investigating government task force. (*Regents*, *supra*, 165 Cal.App.4th at p. 676.) The plaintiffs argued the defendants waived the privilege by making a business decision to produce the documents. (*Id*. at p. 677.) The defendants presented evidence that they believed they would suffer severe regulatory or criminal consequences if they were seen as uncooperative. (*Id*. at pp. 677-678.) Reviewing what level of compulsion will permit the holder of a privilege to disclose privileged information without waiving the privilege, this court reviewed authorities pertaining to inadvertent discovery disclosures and concluded: "[I]t is clear that when privileged documents have been disclosed either in response to the request of a government agency or inadvertently in the course of civil discovery, no waiver of the privilege will occur if the holder of the privilege has taken reasonable steps under the circumstances to prevent disclosure. The law does not require that the holder of the privilege take 'strenuous or Herculean efforts' to resist disclosure." (*Id*. at p. 683.)[3]

---

[3] One of the cases relied upon by this court in *Regents* was *U.S. v. de la Jara* (9th Cir. 1992) 973 F.2d 746, involving the government's discovery of privileged documents during a search warrant. (*Regents*, *supra*, 165 Cal.App.4th at p. 681.) This court quoted *de la Jara*: " 'In determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure are to be considered. [Citations.] We have previously held that the attorney-client privilege may be waived by implication, even when the disclosure of the privileged material was "inadvertent" or involuntary. [Citation.] When the disclosure is involuntary, we will find the privilege preserved if the privilege holder has made efforts "reasonably designed" to protect and preserve the privilege. [Citation.] Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter. [¶] De la Jara did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence. By immediately attempting to recover the letter, appellant could have minimized the damage caused by the breach of

Waiver, however, does not occur from an " 'accidental, inadvertent disclosure of privileged information by the attorney' " for the privilege holder. (*Ardon*, *supra*, 62 Cal.4th at p. 1187, quoting *State Fund*, *supra*, 70 Cal.App.4th at p. 654.)[4]  In *State Fund*, the Court of Appeal articulated the ethical obligations of an attorney who receives privileged documents due to inadvertence, a holding that the California Supreme Court has since embraced as a " 'fair and reasonable approach.' " (*Ardon*, at p. 1187; *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 817 [applying *State Fund* to work product doctrine].)  *State Fund* involved the inadvertent production of numerous attorney-client privileged documents by plaintiff's attorneys to defense counsel, who then refused the plaintiff's counsel's demand to return the documents on grounds the plaintiff had waived the privilege. (*Ardon*, at pp. 1186-1187; *State Fund*, at p. 654.)  The trial court sanctioned the defense lawyer. (*State Fund*, at p. 647.)  Though the Court of Appeal agreed with the sanctions in principle, it reversed them given the dearth of established law governing the circumstances. (*Ibid*.)

Because in *State Fund* the disclosure was made by counsel, the court "focus[ed] on whether any statement or conduct of [the client] indicates that it consented to counsel's disclosure." (*State Fund*, *supra*, 70 Cal.App.4th at p.

---

confidentiality.  As a result of his failure to act, however, he allowed "the mantle of confidentiality which once protected the document[ ]" to be "irretrievably breached," thereby waiving his privilege.' " (*Regents*, at pp. 681-682, quoting *de la Jara*, 973 F.2d at pp. 749-750.)

4      In *Ardon*, the California Supreme Court extended *State Fund*'s inadvertent disclosure rule to a city administrative office's inadvertent production of privileged materials to a plaintiff under a Public Records Act request.  (*Ardon*, *supra*, 62 Cal.4th at p. 1180.)

647.)[5]  The court stated that "[a] trial court called upon to determine whether inadvertent disclosure of privileged information constitutes waiver of the privilege must examine both the subjective intent of the holder of the privilege and the relevant surrounding circumstances for any manifestation of the holder's consent to disclose the information." (*Id*. at p. 653.)  The evidence provided by the disclosing attorneys showed the forms were designed to make clear that they were intended to be confidential attorney-client communications, and attorneys followed specific procedures to ensure privileged documents were not produced.  (*Ibid*.)  An attorney testified the disclosure of the documents was entirely unintentional, and "the promptness with which counsel for State Fund moved to secure return of the documents indicated that there was no intent on the part of [the client] to waive the privilege." (*Ibid*.)

The court in *State Fund* set forth the following  rule:  "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain [whether] the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.  The parties may then proceed to resolve the situation by

---

[5]  In a footnote, the *State Fund* court cited a law review article in which the author summarized several approaches to viewing the client's intent, concluding:  " 'Regardless of the approach used, the final determination of whether an assertion of the attorney-client privilege will be upheld in an inadvertent disclosure context depends upon whether the client either expressly or impliedly waived the privilege.' " (*State Fund, supra*, 70 Cal.App.4th at p. 652, fn. 2.)

16

agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified. . . . [W]henever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact." (*State Fund, supra*, 70 Cal.App.4th at pp. 656-657; see *Ardon, supra*, 62 Cal.4th at p. 1187.)[6] The court further held that "in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification." (*State Farm*, at p. 657.)

As stated, in assessing waiver a court must consider the privilege holder's subjective intent. (*State Fund, supra*, 70 Cal.App.4th at p. 653.) But the disclosing party's "own characterization of its intent is not dispositive . . . ." (*Ardon, supra*, 62 Cal.4th at pp. 1190-1191; see also *McDermott, supra*, 10 Cal.App.5th at p. 1101.) Further, the court should weigh "[o]ther relevant considerations" including "the precautions the holder took to maintain the privilege and the promptness with which the holder sought return of the inadvertently disclosed document." (*McDermott*, at p. 1102.) The question in assessing waiver in the case of an inadvertent disclosure is whether the

---

[6]     The *State Fund* rule is now the subject of California Rules of Professional Conduct, rule 4.4, which provides: "Where it is reasonably apparent to a lawyer who receives a writing relating to a lawyer's representation of a client that the writing was inadvertently sent or produced, and the lawyer knows or reasonably should know that the writing is privileged or subject to the work product doctrine, the lawyer shall: [¶]  (a) refrain from examining the writing any more than is necessary to determine that it is privileged or subject to the work product doctrine, and [¶]  (b) promptly notify the sender."  (Cal. Rules of Professional Conduct, rule 4.4.) The rule does not put the obligation solely on the recipient to seek a resolution with the opponent or court.

17

holder of the privilege has pursued reasonable means to preserve the confidentiality of the information.  (*Regents*, *supra*, 165 Cal.App.4th at pp. 681-682.)

### III.  *Privileged Nature of the E-mail*

Before we turn to the waiver issue, we address plaintiffs' contention that we may affirm the trial court's order by concluding Novartis did not establish the Reilly e-mail was an attorney-client privileged document. Plaintiffs assert the court did not rule on that question, pointing to its minute order language that Novartis failed to protect "any applicable attorney-client privilege" over the document.  But the court omitted that language from its final ruling, finding implicitly that the privilege applied to the e-mail.  We conclude Novartis made a sufficient prima facie showing, creating a presumption that plaintiffs did not overcome.

For a communication to be privileged it must occur in the course of an attorney-client relationship for legal consultation.  (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 297; see *Wood v. Superior Court of San Diego County, supra,* 46 Cal.App.5th at pp. 575-576.)  Here, the privilege is asserted in a corporate setting, and a corporation is entitled to invoke the privilege.  (See *Costco*, *supra*, 47 Cal.4th at p. 733; *Alpha Beta Co. v. Superior Court* (1984) 157 Cal.App.3d 818, 825.)  The party claiming the privilege must show the "dominant purpose of the relationship between the parties to the communication was one of attorney-client."  (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 51; *Costco*, at pp. 739-740.)  As stated, Plaintiffs in their return admit that the e-mail about which their counsel sought to question Catalano was from Novartis's in-house counsel to other Novartis employees and marked privileged and confidential.  Novartis presented evidence that Reilly was its in-house counsel who gave legal advice

on a variety of issues during the time in question. This established prima facie the communication was made during the course of an attorney-client relationship between in-house counsel and corporate executive. (Accord, *Clark*, at p. 51 [privilege established by showing that memo was sent by company employee to company's attorney and director reporting to attorney; rejecting argument that dominant purpose was an expression of frustration as an impermissible inquiry into the *content* of the e-mail].)

Once the attorney-client relationship was established prima facie, the burden shifted to plaintiffs as the party opposing the privilege to show the communication was not made in confidence. (*Costco*, *supra*, 47 Cal.4th at p. 733.) We are not persuaded by plaintiffs' argument that the record gives "reason to doubt" Novartis intended the e-mail to be confidential. They point to the fact Novartis produced Catalano's e-mail to Reilly, and also assert Novartis set out the substance of the communication—the reason Novartis did not pursue an FDA indication for premature labor—years earlier in meeting minutes with the FDA. Confidentiality of Reilly's e-mail to Catalano is not destroyed merely because Novartis produced a different e-mail from Catalano in which he copied Reilly; a client cannot protect information by merely transmitting it to counsel. (*Los Angeles County Bd. of Supervisors v. Superior Court*, *supra*, 2 Cal.5th at p. 296.) Further, it is impermissible to review the content of the communication to determine whether it is privileged. (*Clark v. Superior Court*, *supra*, 196 Cal.4th at p. 51; accord, *DP Pham, LLC .v Cheadle*, *supra*, 246 Cal.App.4th at pp. 667-668 ["nature of the attorney-client privilege requires absolute protection for all confidential communications between an attorney and a client regardless of their content"].) Finally, the attorney-client privilege protects the transmission of

19

information regardless of whether the information is discoverable from other sources.  (*DP Pham*, at p. 664.)

## IV.  *Waiver Analysis*

On the question of waiver, Novartis's position is simple:  Once its counsel advised plaintiffs that the inadvertently produced e-mail was a privileged document, it was not required to do anything else to preserve the attorney-client privilege.  That is, according to Novartis, it was plaintiffs' burden both under the parties' protective order and California law to immediately return the document and take steps to cease all use of it.  Novartis maintains it took reasonable steps to preserve its privilege by sending its May 2020 letter once it realized plaintiffs had not complied with these obligations but had used the e-mail in their summary judgment opposition, and then by moving to seal the document.  Novartis argues it would be illogical and contrary to law to conclude plaintiffs' failure to return the document or seek a judicial determination caused it to waive the privilege.  Novartis argues its conduct was not an " 'intentional relinquishment of a known right after full knowledge of the facts . . . .' "

As we have stated, plaintiffs admit and there is no dispute that Novartis's original production of the e-mail—the disclosure that resulted in the document getting into the plaintiffs' hands—was inadvertent.  Under *State Fund*, *Ardon*, and the authorities discussed above, Novartis's counsel's accidental or inadvertent disclosure did not itself waive the attorney-client privilege.  (*Ardon*, *supra*, 62 Cal.4th at p. 1187, quoting *State Fund*, *supra*, 70 Cal.App.4th at p. 654.)

But Novartis as the privilege holder was still obligated to act reasonably to protect and preserve the privilege so as not to create circumstances indicating consent or some other intent to relinquish its claim.

20

(See *Regents*, *supra*, 165 Cal.App.4th at p. 679; *U.S. v. de la Jara*, *supra*, 973 F.2d at p. 750.) Whether Novartis adequately preserved and protected its claim of attorney-client privilege requires an inquiry into its statements and conduct following the parties' discovery of the inadvertent disclosure at Catalano's deposition. At that point, Novartis became aware that plaintiffs' counsel possessed the document, and its counsel's objection simultaneously put plaintiffs' counsel on notice of Novartis's claim that the document was privileged. We agree Novartis could reasonably expect plaintiffs' counsel to comply with the ethical obligation to "refrain from examining the materials any more than is essential to ascertain if the materials are privileged . . . ." (*State Fund*, *supra*, 70 Cal.App.4th at p. 656; *Ardon*, *supra*, 62 Cal.4th at p. 1187; *Rico v. Mitsubishi Motors Corp.*, *supra*, 42 Cal.4th at p. 810 [receiving counsel "may not read a document any more closely than is necessary to ascertain that it is privileged"]; *Clark v. Superior Court*, *supra*, 196 Cal.App.4th at p. 52.) Because Novartis's attorneys had put plaintiffs' counsel on notice of its claim of privilege at the deposition, there was no need for plaintiffs' counsel to notify opposing counsel of the disclosure. Under those circumstances, *State Fund* explains it was for the "parties [to] then proceed to resolve the situation by agreement or . . . resort to the court for guidance . . . ." (*State Fund*, at pp. 656-657; see *Rico,* at p. 817 [adopting *State Fund*'s holding]; accord, *McDermott*, *supra*, 10 Cal.App.5th at p. 1092 [*State Fund* rule requires the attorney to review the documents no more than necessary to determine whether they are privileged, notify the privilege holder and "refrain from using the documents until the parties resolve or the court resolves any dispute about their privileged nature"].) Contrary to Novartis's arguments, neither *State Fund* nor the California Rules of Professional Conduct (footnote 6, *ante*) place the burden solely on the

21

receiving party to take steps to resolve the situation with opposing counsel or the court.

Under these circumstances, in the absence of plaintiffs' prompt action in either returning it, proposing an agreement with counsel, or seeking court guidance, it was incumbent on Novartis to take prompt steps to resolve the dispute over the privileged e-mail. We cannot agree it was reasonable for Novartis to wait months resting on the belief that plaintiffs would avoid using the document or seek a resolution, an obligation that *State Fund* did not strictly impose only on plaintiffs.

Novartis's position misunderstands *State Fund's* import. *State Fund* states an ethical rule for *counsel* in receipt of privileged materials; it does not preclude a finding of waiver by the privilege holder client where the privilege holder takes no immediate steps to demand return of an inadvertently produced document or act reasonably to resolve such an accidental disclosure. The *State Fund* ethical obligations on the receiving attorney do not eliminate the producing party's need to take reasonable steps to protect the privilege. The producing party should not forego action on the assumption that opposing counsel in possession of an inadvertently produced privileged document will do the right thing once the parties learn of an inadvertent disclosure. If the receiving counsel does not promptly return the document or seek a resolution, then the producing party should do so. The consequence of a *State Fund* ethical violation by the receiving counsel can be disqualification, and even that is not automatic. (See *Rico v. Mitsubishi Motors Corp.*, *supra*, 42 Cal.4th 807, 810 [trial court properly disqualified counsel who failed to comply with *State Fund* obligations and making full use of a confidential document]; *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1127, 1130; *McDermott*, *supra*, 10 Cal.App.5th at p. 1120 ["

'[D]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed'; an affirmative showing of existing injury from the misuse of privileged information is not required"]; *Clark v. Superior Court, supra*, 196 Cal.App.4th at pp. 41, 53 [disqualification proper where counsel "had received and excessively reviewed privileged documents" posing a "genuine likelihood [that counsel's] conduct could affect the outcome of the litigation" and counsel "affirmatively used some of the substantive information contained in the privileged documents to question witnesses or to support [its client's] claims"].)[7] But a receiving counsel's ethical violation cannot immunize the privilege holder from waiving its attorney-client privilege if the holder engages in conduct inconsistent with protecting the privilege.

Furthermore, as summarized above, the law provides a waiver may occur by a privilege holder's failure to claim the privilege in proceedings in which the holder has the opportunity to claim it. (Evid. Code, § 912; see *Kerner v. Superior Court, supra*, 206 Cal.App.4th at p. 112; *Calvert v. State Bar, supra*, 54 Cal.3d at p. 780.) In that way, the "definition of a waiver under Evidence Code section 912, subdivision (a) differs from the ordinary definition of a waiver as the intentional relinquishment of a known right." (*Kerner*, at p. 112, fn. 13; see *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598 [acknowledging that a waiver may stem from conduct " 'so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished' "].) Here, Novartis waived the privilege when, after demanding return of the privileged e-mail and receiving

---

7    Novartis acknowledges it is not seeking to disqualify plaintiffs' counsel despite plaintiffs' asserted violation of their protective order and the *State Fund* ethical obligations.

23

plaintiffs' refusal, it filed a motion to seal that did not argue the document contained an attorney-client privileged communication. At that point, Novartis and its counsel participated "in a proceeding in which [it had] the legal standing and opportunity to claim the privilege" but "fail[ed] to claim the privilege knowing that the disclosure of privileged information [was] sought." (*Kerner*, at p. 112.)

Our conclusions are consistent with the parties' protective order, which we interpret de novo as neither party points to extrinsic evidence surrounding its entry. Considering the whole of the protective order, we decline to read it as triggering one provision to the exclusion of the other under circumstances where the parties learned of the disclosure simultaneously. Both provisions of paragraph 7 addressing the producing party's and the receiving party's obligations became operational upon Novartis's and plaintiffs' discovery of the inadvertently-produced e-mail at Catalano's deposition. Once plaintiffs learned of the privileged nature of the e-mail, the protective order required them to "immediately return such materials and all copies to [Novartis]" and "not use [the e-mail] for any purpose until the issue has been resolved by agreement of the parties or by order of the court." (Some capitalization omitted.) On the other hand, once Novartis learned of the inadvertent disclosure of the privileged e-mail, the protective order provided that the accidental disclosure would not constitute a waiver "if a request for return [of the e-mail] is made promptly after the producing party learns of its inadvertent production." (Some capitalization omitted.)

Any asserted violation of plaintiffs' obligations under the protective order did not eliminate Novartis's corresponding obligation to protect the confidentiality of the privileged e-mail. When plaintiffs' counsel did not

24

immediately return the e-mail or seek a resolution, it was for Novartis to promptly request the e-mail's return or take other reasonable remedial steps to protect the e-mail's confidentiality, else risk waiving the privilege. For the reasons expressed above, we conclude it did not take such steps, thereby waiving the privilege. We therefore deny the petition.

DISPOSITION

The petition for writ of mandate is denied. Plaintiffs shall recover their costs for the proceedings in this court.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.